UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KAYA SIMIONS,                          )
                                       )
        Plaintiff                      )
                                       )
v.                                     )    Civ. No. 10-10-P-H
                                       )
ANDROSCOGGIN COUNTY JAIL, et al,       )
                                       )
        Defendant                      )


**RECOMMENDED DECISION ON UNOPPOSED MOTION
FOR SUMMARY JUDGMENT**

In this civil action, Kaya Simions seeks vindication for alleged violation of his Eighth Amendment right to be spared cruel and unusual punishment. His allegations concern the denial of adequate bathroom facilities and running water while he was being held at the Androscoggin County Jail. The defendants have moved for summary judgment. After reviewing the uncontested facts in light of the governing legal standards, I recommend that the Court grant the motion for summary judgment.

*Discussion*

*Relevant Procedural Background*

This action was removed from state court on January 7, 2010. On January 15, 2010, the defendants moved for a more definite statement, I granted that motion, and Simions filed an amended complaint on February 18, 2010. On June 8, 2010, I convened a telephone conference as a consequence of a letter I received from defense counsel indicating that the time had run for response to discovery requests on behalf of Defendant Jennifer Cutting. It was agreed that

Simions would respond by June 15, 2010, to the best of his abilities.  On August 16, 2010, Simions filed a motion for discovery seeking a copy of a policy from the jail, photos of a cell, and any tape recording of him being held in a particular cell.  On August 18, 2010, I denied the motion for discovery, explaining,

> plaintiff was warned by me at the telephonic conference that discovery would be in accordance with the scheduling order and discovery has closed per that order; additionally at docket entry no. 18 the clerk's office, at my request, advised him that discovery requests had to go through the defendant's attorney (as I had explained at our telephone conference.) Nevertheless these discovery requests were never sent to defendant's counsel as indicated by counsel's response after he was alerted that the request had been filed with the court. Plaintiff is reminded that he must file a written response to the pending motion for summary judgment by September 7, 2010, or the facts stated therein will be deemed admitted.

(Doc. No. 18.)  A copy of this order was sent to Simions.  The response date has come and gone and Simions has not responded.

*Allegations of Simions's Amended Complaint*

Simions's amended complaint represents that during his stay at the Androscoggin Jail he was placed in a cell that was "defiled by human feces" and he was denied his right to dispose of his own defecation.  He was denied toilet paper and his right to use a proper bathroom.  Specifically he says that in response to his request to use a bathroom Cutting told him to "go in the hole."  He states that he also got a similar response from other officers.  When he was finally seen by Sergeant Littlefield and asked if he could use a regular bathroom, Littlefield instructed him to use the hole.  Describing himself as mentally drained and physically frustrated, Simions attempted to use the hole.  He braced himself up and did not let his body completely touch the cell floor but he was emotionally overwhelmed and gave up.  He fell asleep on the bare floor of the unsanitary, foul smelling cell.  Simions awoke "feeling terribly ill and filthy."  He was and still feels disturbed by the event.  He asked for soap and/or water and this request was denied by

Sergeant Littlefield. To this day he still has trouble using the bathroom because of residual discomfort and fear. He has tried to bring his concerns to the attention of Defendant Christine Samson who brushed off his complaints. With regards to remedy, he wants written apologies, an injunction against this happening to other inmates, and $500,000 for mental and physical damages.

*Eighth Amendment Standard*

Simions's amended complaint is brought under the Eighth Amendment and its prohibition against cruel and unusual punishment. The denial of access to the toilet falls into the "conditions of confinement" genre of Eighth Amendment claims. The United States Supreme Court advises that, while "the Constitution 'does not mandate comfortable prisons,'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)), "neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment,'" id. (quoting Helling v. Mckinney, 509 U.S. 25, 31 (1993)). The Farmer Court explained that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Farmer's discussion clarifies that the Eighth Amendment has an objective and a subjective component. See id. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'" id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991),) that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" id. (quoting Rhodes, 452 U.S. at 34). Second, the prison official must have a

3

"'sufficiently culpable state of mind,'" id. (quoting Wilson, 501 U.S. at 297), and in prison-conditions cases as in Simions's "that state of mind is one of 'deliberate indifference' to inmate health or safety," id. (quoting Wilson, 501 U.S. at 302-03)). See also Overton v. Bazzetta, 539 U.S. 126 (2003).

Simions's untested allegations stated a claim under these standards. See, e.g., Hill v. McKinley, 311 F.3d 899, 903 (8th Cir.2002) (Fourth Amendment violation when plaintiff was secured to the restrainer board naked and spread-eagled in the presence of male officers for three and a half hours, though the defendant prevailed on qualified immunity); Delaney v. DeTella, 256 F.3d 679, 683-86 (7th Cir.2001) (denying segregated inmate all out-of-cell exercise opportunities for six months was an objectively serious deprivation of a basic human need); Palmer v. Johnson, 193 F.3d 346, 349, 351-53 (5th Cir.1999) (overnight outdoor confinement without shelter, protective clothing, or acceptable means to dispose of bodily waste was a deprivation of the minimal civilized measures of life's necessities); Sherman v. Gonzalez, No. 1:09-cv-00420-LJO-SKO PC, 2010 WL 2791565, 4 -6 (E.D. Cal. July 14, 2010) (unpublished); but see Smith v. Copeland, 87 F.3d 265, 268-69 (8th Cir.1996) (being subjected to an overflowing toilet in plaintiff's cell for four days was not violative of the pre-trial detainee's constitutional rights under the totality of the circumstance); Lollis v. Page, Civ. No. 07-4067, 2008 WL 853561, 3 -4 (W.D.Ark. Mar. 27, 2008) (unpublished)("Taking the facts in the light most favorable to Plaintiff, he was exposed to the overflowed toilet for only a short period of time--the duration of the meal. We find no genuine issues of fact as to whether defendants were deliberately indifferent to the risk of harm to Plaintiff posed by the overflowed toilet.").

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I draw all reasonable inferences in favor of Simions, but where he bears the burden of proof, he "'must present definite, competent evidence' from which a reasonable jury could find in [his] favor." United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

Simions has not presented any evidence in defense of the motion for summary judgment. However, this court,

> may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002). Although Simions is provided some latitude as a pro se litigant, he must still defend his action within the context of the pleading rules. See, e.g., Collins v. Colorado Dept. of Corrections, Civ. No. 08-cv-02657-WYD-KMT, 2010 WL 254959, 8 (D. Colo. Jan. 15, 2010).

*Undisputed Facts*

This lawsuit arises out of the Simions's temporary incarceration[1] at the Androscoggin County Jail ("the Jail") from October 7, 2009, through October 9, 2009. At this time, Simions was generally housed at the York County Jail. However, Simions was transported to the Jail in Androscoggin County on the afternoon of October 7, 2009, for a court appearance in Auburn on the afternoon of October 8, 2009. When Simions arrived at the Jail, he was placed in holding cell # 3 which has a toilet and a privacy screen. Shortly after his arrival at the Jail, Simions destroyed the mattress in this cell and removed his clothing. Simions had also become agitated and as a result he was moved from holding cell # 3 to observation cell # 1, and then later to observation cell # 3.

The observation cells are located in the same general area as the holding cells. However, holding cells have a toilet with a privacy screen whereas observation cells instead have a flushable floor grate for inmates to relieve themselves. Generally, observation cells are used for short periods of time when an inmate is uncooperative, destructive, and/or exhibiting self-harm behavior. Simions's behavior was bizarre. The flushable floor grate in the observation cell is not intended to be used for defecation, only urination. If an inmate in an observation cell informs Jail personnel of a need to defecate, he is taken to a toilet. No one at the Jail denied Simions use of a toilet.

Sergeant Littlefield, who was the shift supervisor on duty during the October 7, 2009, incident, and who moved Simions to the observation cell, was never asked by Simions for use of a toilet. Neither Officer Cutting nor Officer Samson interacted at all with Simions during his October 7-9, 2009, stay. Officer Cutting was not on duty at the Jail on October 7 or 8, 2009, and

---

[1] While the facts below do make it clear that Simions was transferred to the jail for purposes of a court appearance, there is no way for me to ascertain if he was solely a pre-trial detainee or a convicted prisoner.

was assigned to medium security on October 9. Officer Samson was assigned to maximum security on October 7, 2009, minimum security on October 8, 2009, and did not work on October 9, 2009. The holding cells and observation cells are located in a different area of the Jail from the maximum security, medium security, and minimum security areas. Ordinarily, an officer assigned to maximum, medium, or minimum security would have no opportunity for interaction with prisoners in the holding cells or observation cells. Although Simions had filed grievances with the Jail on occasions both before and after his October 7-9, 2009, stay, he did not file any grievance with respect to his treatment on October 7 through 9, 2009.

Simions returned to stay at the Jail on October 29, 2009, and he remained at the Jail through December 18, 2009, when he was placed in the custody of the U.S. Marshal. Simions at no time reported or requested treatment for any physical injuries arising out of his treatment at the Jail on October 7-9, 2009.

*Analysis*

Simions has done nothing to contravene the facts forwarded by the defendants and based on those facts there is little question that the circumstances of his confinement do not arise to an Eighth Amendment violation. The summary judgment record is that Simions was transferred to the cell in question because of his own behavior and that if he had made such a request, which he did not, he would have been escorted to bathroom facilities in order to defecate. See cf. Anderson v. County of Kern, 45 F.3d 1310, 1314 -15 (9th Cir. 1995) (after trial) ("There was testimony from some plaintiffs that the cell was dirty and smelled bad. Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment. … The plaintiffs here have not shown, however, that the sanitary limitations imposed upon them were more than temporary. More important, they have not shown why possible sanitation problems required that the County

7

be enjoined permanently from *ever* making *any* use, however temporary, of a safety cell for mentally disturbed or suicidal prisoners. That a safety cell needs more frequent cleaning, or that its toilet needs more frequent flushing, does not establish that the cell must never be used at all.").[2]

*Conclusion*

Based on the record facts and the legal analysis set forth above, I recommend that the Court grant this unopposed motion for summary judgment.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 13, 2010.

---

[2] With regards to Simions's request for money damages, 42 U.S..C.§ 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." As the defendants point out, Simions does not have standing to request injunctive relief on behalf of future detainees at the jail.

In his state court complaint and his amended complaint filed after removal, Simions makes it clear that he brings this action under the Eighth Amendment of the United States Constitution. Simions did not exhaust his administrative grievance concerning this incident, a prerequisite to bringing this action pursuant to 42 U.S.C. § 1997e(a) which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." However, perhaps because this case was removed from state court to this court, the defendants do not press this argument in their memorandum.